1
2
3
4
5                           UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8   JEFFREY SOKOL, *et al.*,                      No. C-13-2153 EMC

9           Plaintiffs,

                                                  **ORDER GRANTING DEFENDANTS'**
10          v.                                    **MOTION TO DISMISS AND**
                                                  **REMANDING ACTION TO STATE**
11  JPMORGAN CHASE BANK, N.A., *et al.*,          **COURT**

12          Defendants.                           **(Docket No. 38)**
    _____/

13

14

15                          I.   **INTRODUCTION**

16          Currently before the Court is the motion to dismiss Plaintiff's' First Amended Complaint

17  filed by JPMorgan Chase Bank, N.A., U.S. Bank, N.A., Citibank, N.A., Christiana Bank & Trust

18  Company, and California Reconveyance Company ("Defendants").  The Court finds this matter

19  suitable for disposition without a hearing and thus **VACATES** the hearing on the motion set for

20  December 19, 2013.  For the following reasons, Defendant's motion is **GRANTED** as to Plaintiff's

21  federal cause of action.  The Court declines to exercise supplemental jurisdiction over Plaintiffs'

22  state law claims and **REMANDS** these causes of action to the Superior Court of California for the

23  County of Contra Costa.

24                    II.   **FACTUAL & PROCEDURAL BACKGROUND**[1]

25          On or about January 12, 2007, Plaintiffs Jeffrey and Valerie Sokol purchased a house at 5416

26  Blackhawk Drive, Danville, California 94506 ("Property").  First Amended Complaint ("FAC")

27  _____

28          [1] The following factual allegations are taken from Plaintiffs' First Amended Complaint.  Dkt.
    No. 37.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   ¶ 11.  To effectuate this purchase, Plaintiffs executed a promissory note ("Note") in the amount of

2   $2,325,000.00 (the "Loan").  *Id.*  The Loan was a "thirty (30) year adjustable rate loan through

3   WAMU, with an expressed interest rate of 8.033%.  The monthly payment for the first two (2)

4   months was $6,708.86 (excluding taxes and insurance), thereafter the payment could change on a

5   monthly basis based on the MTA Index."  *Id.*  In connection with the Loan, WAMU took a Deed of

6   Trust which it recorded with the Contra Costa County Recorder's Office on January 23, 2007 ("First

7   DOT").  *Id.* ¶ 12.  On the same day, and as part of the Loan transaction, Plaintiffs obtained a second

8   mortgage in the amount of $400,000.00, secured by a second deed of trust recorded with the Contra

9   Costa County Recorder's Office ("Second DOT").  *Id.* ¶ 13.

10          After the origination and funding of the Loan, WAMU attempted to sell and transfer the Note

11   into the WMALT 2007-OA3 Trust.  *Id.* ¶ 15.  U.S. Bank is alleged to have been the trustee for the

12   WMALT 2007-OA3 Trust.  *Id.* ¶ 16.  Plaintiffs conclusorily allege that "WAMU/CHASE violated

13   the express terms of the [Pooling and Servicing Agreement]" and that the "Note and Deed of Trust

14   were not properly assigned to Defendant in accordance with their own Pooling and Servicing

15   Agreement."  *Id.* ¶ 23-24.

16          Plaintiffs allege that after the "attempted transfer" of the Loan to this trust, "WAMU only

17   retained servicing rights and not a beneficial interest in the Deed."  *Id.* ¶ 17.  WAMU's servicing

18   rights were transferred to Chase by way of a Purchase and Assumption Agreement in which Chase

19   acquired WAMU's assets.  *Id.*  Despite the failed securitization, Plaintiffs allege that WAMU was

20   "paid the balance owed on the NOTE by the sponsor/seller and therefore no longer has an interest in

21   the Note."  *Id.* ¶ 18.[2]  After the attempted transfer of the loans to the respective trusts, Plaintiffs

22   allege that Chase continued to act as the beneficiary of both loans.  *Id.* ¶ 22.  Plaintiffs claim that

23   Chase cannot be the beneficiary because the loans were improperly sold to the WMALT 2007-OA3

24   Trust and HE2 Trust.  *Id.*

25          Plaintiffs allege that U.S. Bank (as trustee for the WMALT Series 2007-OA3 Trust) and

26   Citibank and Christiana (as trustees for the Series 2007-HE2 Trust) have no valid and enforceable

27   ────────────────────

28          [2] Plaintiffs similarly allege that there was an attempted transfer of their second mortgage into
     the HE2 Trust, with Citibank and Christiana Bank serving as trustees.  *Id.* ¶ 19.

secured claims against the Property.  *Id.* ¶ 29.  Specifically, Plaintiffs claim that the U.S. Bank and Citibank cannot show: (1) "There was a complete and unbroken chain of endorsements and transfers of the Note from and to each party to the securitization transaction"; (2) "That it has actual physical possession of the Note at that point in time, when all endorsements and assignments had been completed" and (3) "That there was a complete and unbroken chain of endorsements and transfers of the Deed of Trust from and to each party to the securitization transaction."  *Id.*

After making payments on the loans for four years, on September 6, 2011, Cal Reconveyance Company recorded a Notice of Default ("NOD") against the Property.  *Id.* ¶ 88.  On this same day, Chase is alleged to have transferred or sold the First DOT to U.S. Bank through an "Assignment of Deed of Trust.  *Id.* ¶ 89.  This assignment "purports to transfer all beneficial interest under the [First DOT], together with the Note, from Chase to U.S. Bank."  *Id.* ¶ 90.

Plaintiffs allege one federal cause of action – an alleged violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g).  *Id.* ¶ 141-153.  Plaintiffs allege that if the Court were to determine that Chase was the beneficiary when it assigned the First DOT to U.S. Bank in September 2011, then  § 1641(g) applied to U.S. Bank.  *Id.* ¶ 143.  In violation of  § 1641(g), U.S. Bank failed to provide Plaintiffs with written notice of the transfer of the First DOT within 30 days.  *Id.* ¶ 145.  Plaintiffs allege they did not discover the violation of  § 1641 "until they retained counsel and discovered that the Loans had been assigned numerous times."  *Id.* ¶ 150.  Plaintiffs allege that Chase's "continued representation that it was the true creditor even in the Notice of Default caused Plaintiff to be unaware of U.S. Bank's purported involvement in the loan."  *Id.* ¶ 153.

### III.   DISCUSSION

A.   Plaintiff's TILA Claim is Barred by the Statute of Limitations

Defendants argue that Plaintiffs' TILA action is barred by the statute of limitations.  Dkt. No. 38, at 19.  Civil actions under TILA are governed by a one year statute of limitations.  See 15 U.S.C. § 1640(e) ("[A]ny action under this section may be brought . . .  within one year from the date of the occurrence of the violation . . . ."); *see also McGough v. Wells Fargo Bank, N.A.*, No. C12-0050 TEH, 2012 WL 2277931, at *5 (N.D. Cal. June 18, 2012).  Accordingly, the statute of limitations began to run on Plaintiffs' TILA claim 30 days after the transfer that triggered the disclosure

1 | obligation. *See Connell v. CitiMortgage, Inc.*, No. 11-0443-WS-C, 2012 WL 5511087, at *8 n.13

2 | (S.D. Ala. Nov. 13, 2012); *see also McDonald v. OneWest Bank, FSB*, No. C10-1952 RSL, 2012

3 | WL 555147, at *3 (W.D. Wash. Feb. 21, 2012) (same).

4 |       In the TILA context, equitable tolling serves to "suspend the limitations period until the

5 | borrower discovers or had reasonable opportunity to discovery the fraud or nondisclosures that form

6 | the basis of the TILA action." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). In other

7 | words, equitable tolling applies "'in situations where, despite all due diligence, the party invoking

8 | equitable tolling is unable to obtain vital information bearing on the existence of the claim.'"

9 | *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (quoting *Socop-*

10 | *Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 2001)). The Ninth Circuit has indicated that

11 | "[e]quitable tolling is generally applied in situations 'where the claimant has actively pursued his

12 | judicial remedies by filing a defective pleading during the statutory period, or where the complainant

13 | has been induced or tricked by his adversary's misconduct into allowing the filing deadline to

14 | pass.'" *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) (quoting *Irwin v. Dep't of*

15 | *Veterans Affairs*, 498 U.S. 89, 95 (1990)); *see also Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir.

16 | 1999) ("Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful

17 | conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's

18 | control made it impossible to file a claim on time.").

19 |       Plaintiffs base their TILA claim on the September 6, 2011 assignment of the First DOT from

20 | Chase to U.S. Bank. FAC ¶ 143. Accordingly, the statute of limitations began to run on Plaintiffs'

21 | TILA claim beginning on October 6, 2011 – 30 days after the alleged assignment occurred.

22 | However, Plaintiff's state law complaint was not filed until April 2013. Dkt. No. 1, at 11. Plaintiffs

23 | argue, however, that they are entitled to equitable tolling. Dkt. No. 39, at 8-10. Specifically,

24 | Plaintiffs argue that they "did not discover that US Bank and CBT claimed to own the Note until

25 | they obtained an audit on the property." Dkt. No. 39, at 9. Plaintiffs state that they "could have

26 | checked the public record for the assignment," but that this would have not have been "reasonably

27 | diligent" but, rather, would have been "well over diligent." *Id.* at 10.

28 |

United States District Court

For the Northern District of California

The Court rejects Plaintiffs' argument and finds that equitable tolling does not apply. Defendants recorded the assignment of the First DOT.  *See* FAC, Ex. D.  Numerous courts from around the country have expressly rejected the application of equitable toling in the context of § 1641(g) where the underlying assignment was recorded.  *See, e.g.*, *Brown v. U.S. Bank Nat'l Ass'n*, No. C12-04587 HRL, 2013 WL 4538131, at *2 (N.D. Cal. Aug. 23, 2013) ("Plaintiff concedes that the transfer was a matter of public record, and provides no reason, other than the alleged violation itself, to equitably toll the statute of limitations."); *Dela Cruz*, 2013 WL 1759001, at *4 ("Here, there is no basis to equitably toll the statute of limitations . . . since the recording of the Assignment provided Plaintiffs with constructive notice of the Assignment for the entire duration of the statute-of-limitations period."); *Galvin v. EMC Mortgage Corp.*, No. 12-cv-320-JL, 2013 WL 1386614, at *15 (D.N.H. Apr. 4, 2013) ("The Galvins themselves allege in their complaint that the assignment in question was recorded . . . .  In other words, from that date forward, Mellon made no secret of its possession of the Galvins' mortgage; the assignment was a matter of public record that the Galvins easily could have discovered had they desired."); *Salewske v. Citibank, N.A.*, No. 12-CV_12580, 2012 WL 6840572, at *9 (E.D. Mich. Oct. 9, 2012) (holding that the "public recording [of an assignment] defeats any claim that Defendant concealed its conduct").

Accordingly, Defendants made no secret of the assignment of Plaintiffs First DOT, having publically recorded it with the county recorder's office.  In addition, the recording of this assignment provided Plaintiffs with constructive notice of the assignment.  *See* Cal. Civ. Code § 2934 ("Any assignment of a mortgage and any assignment of the beneficial interest under a deed of trust may be recorded, and from the time the same is filed for record operates as constructive notice of the contents thereof to all persons . . . ."); *see also Dela Cruz*, 2013 WL 1759001, at *4 (declining to equitably the statute of limitations in a TILA action because the recording of the assignment gave plaintiff constructive notice of the assignment); *Aguirre v. Cal-Western Reconveyance Corp.*, No. CV 11-6911 CAS, 2012 WL 273753, at *6 (C.D. Cal. Jan. 30, 2012) (recognizing that recording an assignment "'operates as constructive notice of the contents thereof, to all persons,' including plaintiff" (citation omitted)).

United States District Court

For the Northern District of California

1    While not raised by Plaintiffs in their opposition, the First Amended Complaint appears to

2    allege in two places that Defendants "concealed" facts preventing Plaintiffs from being aware of the

3    TILA violation.  Specifically Plaintiffs allege:

4    •    "This is due to Defendants [sic] concealment of the facts.  Defendants purported to be the

5         beneficiary under the guise that they had acquired the interest during the securitization

6         scheme.  However, it was only once it was concluded that the securitization scheme failed

7         that it became apparent that alternatively the loan may have been transferred via an

8         assignment."  FAC ¶ 96.

9    •    "Furthermore, Chase continued to represent that it was the investor and owner of the loan

10        thereby deceiving Plaintiff into believing it was the true creditor.  Chases [sic] continued

11        representation that it was the true creditor even in the Notice of Default caused Plaintiff to be

12        unaware of US Bank's purported involvement in the loan." *Id.* ¶¶ 151, 152.

13   "When . . . equitable tolling is based on a theory of fraudulent misrepresentation, it must be plead

14   according to the heightened pleading standard contained in Rule 9(b)." *Ireland v. Centralbanc*

15   *Mortg. Corp.*, No. 5:12-cv-02991 EJD, 2012 WL 6025764, at *3 (N.D. Cal. Dec. 4, 2012); *see also*

16   *Angel v. BAC Home Loan Serv., LP*, No. 10-00240 HG-LEK, 2010 WL 4386775, at *4 (D. Hawai'i

17   Oct. 26, 2010) (same).  The Court finds that these two, conclusory, allegations do not meet the

18   pleading requirements of Rule 9(b) and do not create a basis for equitable tolling.  In light of the

19   recording of the assignment of the First DOT and the fact that Plaintiffs received a Notice of

20   Default, Plaintiffs have failed to explain with sufficient factual detail why they had no reasonable

21   opportunity to discover the alleged TILA notice violation within the statutory period.

22        For the foregoing reasons, the Court finds that Plaintiffs' TILA claim is barred by the statute

23   of limitations.  The Court has previously dismissed Plaintiffs' TILA claim with instructions to allege

24   in their amended complaint "specific facts demonstrating that equitable tolling should apply in this

25   case." Dkt. No. 33, at 2.  Plaintiffs have failed to do so.  Accordingly, Plaintiffs' TILA claim is

26   **DISMISSED**, with prejudice.

27

28

**United States District Court**
For the Northern District of California

B.      Plaintiff's Remaining State Law Claims

Having dismissed Plaintiffs' federal claim, the Court must determine whether to continue to exercise supplemental jurisdiction over Plaintiffs' state law claims.  Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction  if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  When deciding whether to continue exercising supplemental jurisdiction, a district court should be guided by consideration of a balance of the factors of "'judicial economy, convenience, fairness, and comit.'"  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Given the early stage of proceedings and California's interest in applying its own law, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and **REMANDS**  this action to California state court.  *See Carnegie-Melon*, 484 U.S. at 350 ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (foonote omitted)).

## IV.   CONCLUSION

Plaintiffs' TILA claim is **DISMISSED** with prejudice.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and these claims are **REMANDED** to the Superior Court of California for the County of Contra Costa.

This order disposes of Docket No. 38.


IT IS SO ORDERED.


Dated:  December 16, 2013

_____
EDWARD M. CHEN
United States District Judge